UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFREY LOWERY,

                                    Petitioner,

                                                            DECISION AND ORDER

-vs-                                                        6: 19-CV-6612 CJS

SUPERINTENDENT, ATTICA
CORRECTIONAL FACILITY,

                                    Respondent.
_____

## INTRODUCTION

Petitioner Jeffrey Lowery ("Lowery" or "Petitioner") brings this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his conviction in New York State County Court, Livingston County, upon a jury verdict, of failure to report under the Sex Offender Registration Act ("SORA"), New York Corrections Law § 168-f(3), for which he was sentenced, as a persistent felony offender, principally to an indeterminate prison sentence of fifteen years to life.  Although Petitioner had a horrendous criminal record prior to that conviction, he asserts that the sentence is unconstitutional due to the alleged vindictiveness of the prosecutor and judge, in pursuing and imposing, respectively, the designation of persistent felony offender.  However, for the reasons explained below, the petition for a writ of habeas corpus is denied.

## BACKGROUND

The reader is presumed to be familiar with the facts and procedural history of this action.  As noted earlier, Petitioner was sentenced on the instant conviction as a persistent felony offender.  In that regard, prior to the instant offense of conviction, Petitioner had numerous prior felony convictions, including four convictions for violent

felonies.   Of particular relevance to this action, in 1977, Petitioner was convicted of Rape in the First Degree and sentenced to an indeterminate prison term of from 7½ to 23 years. In 1986, Petitioner was convicted of Perjury in the First Degree.   Shortly after that conviction, also in 1986, Petitioner escaped from the Livingston County Jail and gratuitously and grievously wounded a Livingston County Sheriff's Deputy, for which Petitioner was convicted of, *inter alia*, Assault in the First Degree, Assault in the Second Degree, and Escape in the First Degree, and sentenced to an indeterminate sentence of ten to twenty years in prison.[1]

In 2008, Livingston County Court Judge Dennis Cohen ("Judge Cohen") adjudicated Petitioner a Level 3 sexually violent offender under New York's Sex Offender Registration Act ("SORA"). This designation imposed a requirement on Petitioner, when he was released from prison, to personally verify his address with "the local law enforcement agency" every 90 days.   Before Petitioner was paroled, he acknowledged that he understood the duty to verify his address and to comply with the other requirements imposed by SORA.   Petitioner, though, violated parole and was returned to prison for two years.

In January 2011, Petitioner was again released from prison on parole, and began reporting as required by SORA.   In addition to the SORA reporting requirements, Petitioner was also required to periodically report to his parole officer.   As will be discussed further below, Petitioner's reporting requirements for SORA and parole were

---

[1] *See*, ECF No. 1-5 at pp. 28–29 ("[District Attorney McCaffery:] Then, the most heinous , violent crime that can happen to anybody, he savagely and brutally attacked one of our jail deputies, Deputy Bill Sackett, shoved sheets down his throat, choked him, beat him.  He was free, he escaped from jail, yet he chose to go back and violently and savagely attack Deputy Sackett.").

separate and distinct, as were the reporting locations.   Although, Petitioner's SORA reporting requirement was also a condition of his parole.

In February 2012, while still on parole, Petitioner changed his residence to the Town of Springwater, in Livingston County, New York, and notified the Livingston County Sheriff of that fact.   Thereafter, Petitioner was required by SORA to report to the Office of the Livingston County Sheriff every ninety days to verify his address.[2]   In July 2012, Petitioner reported to the Livingston County Sheriff's Office to have his annual photo taken, as required by SORA.   However, Petitioner did not thereafter verify his address with the Livingston County Sheriff during any subsequent 90-day period.   In other words, Petitioner violated SORA.

Petitioner did, however, continue to report to his parole officer as required, though his parole officer was unaware that Petitioner was not in compliance with his SORA reporting requirement, which was also a violation of Petitioner's parole conditions.

On February 6, 2013, Petitioner was arrested and charged with violating SORA's 90-day reporting requirements.   A Livingston County Grand Jury subsequently indicted Petition for failure to report every ninety days as required by SORA, NY Corrections Law § § 168-f(3) & 168-t.

At arraignment on the indictment, the prosecution noted that the charged offense was a Class E felony, that Petitioner had eleven previous felony convictions, four of them for violent felonies, and that he was "persistent eligible on this particular offense."[3] Moreover, at a subsequent appearance relating to motions, Petitioner's defense counsel

---

[2] Since the Town of Springwater did not have its own police department, Petitioner was required to report to the Livingston County Sheriff.

[3] ECF No. 5-3 at p. 8 ("There is eleven prior felony convictions, four them violent felonies.  He is persistent eligible on this particular offense.").

noted that he was evaluating Petitioner's status as a persistent felony offender.[4] Accordingly, at every point in his prosecution, Petitioner, who was obviously aware of his own lengthy criminal history and poor institutional record, was further aware that if convicted, he could face sentencing as a persistent felony offender.

Nevertheless, Petitioner turned down a plea offer to a sentence of 1 ½ to 3 years, as a second felony offender, evidently because he insisted on being able to serve "local time," and because he thought he could establish that he was not responsible for his failure to report as required by SORA, since he claimed he was told not to report by his parole officer.[5]  However, as discussed further below, the prosecution showed at trial that Petitioner's parole officer never told him not to report for SORA, and that the parole officer had no legal authority to excuse Petitioner from his SORA reporting obligation in any event.

Judge Cohen presided over Petitioner's jury trial.   At trial, the prosecution introduced evidence that, *inter alia*, Petitioner was a Level 3 Sex Offender who was required by SORA to report to the Livingston County Sheriff's Office every 90 days; that Petitioner aware of that requirement; that Petitioner had failed to report to the Livingston County Sheriff's Office for approximately six months by the time of his arrest; and that while Petitioner was on parole at the time, the reporting requirements for parole and SORA were separate and distinct.[6]

---

[4] ECF No. 5-3 at pp. 13–14 ("THE COURT:  Do you want an adjournment?  Are there legal issues that you are looking into?  MR. D'ARPINO:  Yes, there is a potential issue with respect to status of a persistent felony status, I would request an adjournment on that basis.").

[5] ECF No. 5-3 at p. 8, Arraignment Tr. ("THE DEFENDANT: I was reporting for parole in Ontario County. I came here to get a picture taken.  Someone sent me documentation saying to come here.  I came here to get my picture taken I said do I come here now, they told me no.  I asked my parole office and he told me no.  So that's the crux of it.").

[6] There was no dispute that Petitioner was in fact a Level 3 Sex Offender who was required to report every ninety days.

Petitioner did not testify at trial.  Nevertheless, the defense attempted to show that Petitioner may have believed he was not required to report, or may have been told not to report, to the Livingston County Sheriff's Office.  There was no actual evidence, however, that Petitioner was ever told not to report to the Livingston County Sheriff's Office for SORA reporting.  Rather, there was evidence only that Petitioner had been told not to report to the Livingston County Jail for parole reporting purposes.[7]

During his summation, defense counsel argued that there was reasonable doubt as to Petitioner's guilt.  In particular, defense counsel asserted that the prosecution had now shown that Petitioner had failed to report on the specific date charged in the indictment, February 4, 2013.  Defense counsel also seemingly suggested that Petitioner was not responsible for failing to report to the Livingston County Sheriff's Office for SORA purposes, since he had been told not to report to the Livingston County Jail for parole purposes, and the Livingston County Sheriff's Office was located near the Livingston County Jail.[8][9]  The prosecution pointed out during its summation, however, that Petitioner had reported to the Livingston County Sheriff's office as required in February 2012 and July 2012, but thereafter had failed to continue reporting.[10]

---

[7] Petitioner was subject to both parole obligations and SORA obligations, which were separate obligations.  Evidence at trial indicated that parolees residing in Livingston County typically reported to the Livingston County Jail for parole reporting purposes, while Level 3 Sex Offenders residing in Livingston County were required to report to the Livingston County Sheriff's Office, which is separate from the Jail. The jury was not told the reason why Petitioner was told not to report to the Jail for parole purposes, which was that the Superintendent of the Jail did not want Petitioner on the jail premises, due to the fact that he had escaped from the jail and assaulted a sheriff's deputy employed at the jail.

[8] Trial Tr. at p. 506.

[9] While not specifically arguing this to the jury, defense counsel also seeming implied, through his elicitation of testimony, that the SORA reporting requirements were superfluous in Petitioner's case since he was being supervised by a parole office who could almost instantly locate Petitioner at any given moment because of the GPS bracelet.

[10] See, Trial Tr. at pp. 514–515 ("He did what he was supposed to do in February 2012.  July 2012, same thing.  . . .  He knew the rules.  He played by the rules.  And he followed the rules.  But what happened after July 2012 is he refused to play by the rules.  He didn't come again.").

The jury convicted Petitioner.   Subsequently, the prosecution requested an adjudication that Petitioner met the requirements to be sentenced as a persistent felony offender. *See*, New York CPL § § 400.20.[11]  In support of the application, the prosecution referenced four of Petitioner's prior felony convictions, as well as his conduct while on parole and while in prison.[12]   In opposing that, defense counsel raised various objections to Petitioner's numerous past convictions, and noted that that the maximum sentence for the SORA violation, a Class E Felony, without the persistent offender designation was two to four years.   Additionally, defense counsel maintained that when interviewed by probation in connection with the presentence investigation, Petitioner's parole officer had opined that Petitioner had been confused about his reporting requirement under SORA. In general, defense counsel argued that despite his lengthy criminal record, Petitioner should not be sentenced as a persistent felony offender since he was now older and wiser, and unlikely to commit new crimes.[13]

Defense counsel also asserted that sentencing Petitioner as a persistent felony offender would amount to prosecutorial and judicial vindictiveness.   In that regard, defense counsel primarily relied on the fact that the prosecution had initially offered a plea bargain with a sentence of 1 ½ to 3 three years, and that nothing new had been learned during the course of the trial that would justify a longer sentence.[14] Defense counsel

---

[11] *See*, CPL § 400.20(1) ("The provisions of this section govern the procedure that must be followed in order to impose the persistent felony offender sentence authorized by subdivision two of section 70.10 of the penal law. Such sentence may not be imposed unless, based upon evidence in the record of a hearing held pursuant to this section, the court (a) has found that the defendant is a persistent felony offender as defined in subdivision one of section 70.10 of the penal law, and (b) is of the opinion that the history and character of the defendant and the nature and circumstances of his criminal conduct are such that extended incarceration and lifetime supervision of the defendant are warranted to best serve the public interest.").

[12] State Court Tr. at pp. 690–691.

[13] State Court Tr. at p. 694 ("Mr. Lowery has had a violent criminal history.  But it's decades old.  Nobody is who we were decades ago.").

[14] Defense counsel indicated that the trial judge had "affirmed" that he would impose the sentence in the

argued that the prosecutor therefore could only be seeking to punish Petitioner for exercising his right to proceed to trial.

However, the prosecutor explained that he made the plea offer not because he believed Petitioner deserved the sentence offered, but because he was unsure whether he could obtain a conviction, and that his decision to seek persistent felony offender status following the conviction was based on Petitioner's criminal actions and characteristics, rather than his decision to proceed to trial:

> Your Honor, I would submit that we are very fortunate in this county that it's few and far between defendants that come here that have eleven felony convictions, four violent felony convictions, who viciously rape a twenty-one-year-old girl, savagely attack a Livingston County Sheriff's Deputy. I think its few and far between that we get someone of Mr. Lowery's history and criminal record that we seek persistent status.

> So I think, again, it's not to punish him going to trial, it's to punish him and lock him up for the rest of his life because of conduct he has repeatedly demonstrated in this court.
>
> ****

> Quite frankly, Your Honor, I didn't believe we could prove the case at trial. This was a highly technical case. He failed to appear for a photograph after being directed by Sheriff York not to come to the jail. I felt it was a close case. I had reasonable doubt in my own mind that it's something that a jury would in fact convict the defendant of. We thought we had a viable case to sell that to a jury. That a guy who has this kind of record in our county would somehow evade getting his photograph taken was a tough sell. That's why that plea offer was made because – short of losing all together and getting nothing on Mr. Lowery. He rolled the dice, went to trial.

---

plea offer if the offer was accepted, but the court quickly refuted that assertion, noting that it had never given such an indication, and reminded defense counsel that the possibility of a persistent felony offender sentence had been raised at the same appearance. State Court Tr. at p. 696 (THE COURT: "I didn't agree to anything. You --- my recollection was that there was an offer in conference that was rejected. . . . You went to your client on that. I just sat there as far as – I have a pretty clear recollection because, I mean, persistent even came up during that conference.").

I would have wanted persistent. Who's going to plead guilty to an E felony with a sentence of persistent felony status. I would be a fool to say: Hey, if you plead we will give you persistent.

We went to trial, we proved our case and his history, circumstances and record warrant lifetime incarceration.

State Court Tr. at pp. 701–702; *see also, id.* at 730 ("[P]art of the People's position is just the egregiousness of some of his prior convictions besides the sheer number. I think especially the assault and the escape, I intend to present some proof to talk to and advise the Court why those heinous crimes and his heinous actions over his career as a criminal warrant persistent felony offender status.").

Ultimately, following more than a year of post-trial discovery (which was due to the length and breadth of Petitioner's criminal history, every aspect of which Petitioner disputed,[15] and the difficulty in locating documentation of such convictions and of Petitioner's disciplinary history in prison[16]) and a three-day hearing on the persistent felony offender issue,[17] Judge Cohen issued a decision and order determining that Petitioner should be sentenced as a persistent felony offender.[18] Among other things, Judge Cohen noted the circumstances of Petitioner's escape from the Livingston County Jail, observing, in pertinent part:

---

[15] *See*, Decision on Sentencing Hr'g, ECF No. 1-3 at p. 4 ("Defense counsel stated that defendant was challenging the validity and constitutionality of every felony conviction listed in the Statement. He further advised the court that there were no uncontroverted allegations.").

[16] Regarding Petitioner's prison disciplinary record, the prosecutor submitted evidence concerning "twenty-nine tier two violations, fourteen serious tier three infractions including direct order out of place, creating a disturbance, harassment, threats, altered item, unauthorized exchange, drugs, tattooing, alcohol, weapons four times, demonstration, unauthorized assembly, fighting and rioting." State Court Tr. at p. 883. Defense counsel, meanwhile, argued that Petitioner behaved during his final years in prison, to the point that he had good time credit restored. *Id*. at p. 912.

[17] At the conclusion of the hearing, the prosecutor gave a detailed explanation for why he was seeking persistent felony offender status, which, due to its length, the Court will not set forth verbatim in this Decision and Order. *See*, State Court Tr., ECF No. 5-3 at pp. 916–920.

[18] ECF No. 1-3.

Three days after being convicted of Perjury 1st and while awaiting sentencing, defendant and two others assaulted Livingston County Sheriff's Deputy William Sackett and escaped from the Livingston County Jail.  This occurred on January 26, 1986.  Defendant and the other escapees fabricated tools to disengage the locks.  Deputy Sackett was beaten during the escape so severely that he was unrecognizable.  Defendant and the other escapees "[r]epeatedly beat and repeatedly kicked to near death [Deputy] Sackett …; repeatedly strangled with hands and toweling or sheets [Deputy] Sackett, stuffed a towel or sheet down his throat; and caused massive facial trauma, a fractured skull, and multiple injuries to the eyes, ears, nose and facial nerves …"  The escaping inmates left a sheet over the deputy's body and a note on or by his body.  The note had a drawing of a knife and said: "Life 'till the end."  Then, in a different handwriting: "Fuck them all.  Kill, Kill, Kill, Kill.  Suck my ass."

ECF No. 1-3 at p. 19.  The court went on to discuss additional aggravating conduct by Petitioner, including misbehavior while in jail and prison.  The court also discussed various factors mitigating against sentencing Petitioner as a persistent felony offender.

Ultimately, however, Judge Cohen found Petitioner's character and the circumstances of his crimes warranted that he be sentenced as persistent felony offender:

Now, after careful and due consideration, the court finds that extended incarceration and life-time supervision will best serve the public interest.  The court does *not* reach this decision lightly, but the preeminent concern *must be* the public interest.

The defendant has demonstrated, from his initial contact with the criminal justice system at age 15 until now, he can not refrain from violating the law.  He has been convicted for four prior felonies and has engaged in extreme acts of violence.  The facts underlying the Rape 1st and Assault 1st convictions are particularly egregious in their depravity.  The facts underlying the Perjury 1st conviction demonstrate defendant's willingness to lie when it suited his purpose.  And, he escaped and beat a deputy to avoid being sentenced on that conviction.  The facts underlying the Criminal Possession of Stolen Property 2nd conviction demonstrate that defendant would do whatever it took to avoid capture including a 100 mph chase [in a stolen vehicle].  As he stated, "he had nothing to lose and just wanted to get away to avoid incarceration."  He now stands convicted of his fifth felony.

Defendant failed to register as a sex offender even though he is a level 3, sexually violent offender. Defendant endangered the public by not registering as required. Defendant's criminal history is replete with committing one felony after another. He has also repeatedly violated parole. His crimes have hurt people and endangered the public. Defendant's inmate history demonstrates utter disregard for rules, defiance to authority and his overall dangerousness. While the court is mindful that defendant had his good time restored in 2008, the court is *also* mindful that, within months of being paroled in 2008, defendant violated parole twice and was returned to prison for another two years. Thereafter, he was arrested for and convicted of this felony. For all of the aforementioned reasons and with the "public interest" in mind, it is hereby ORDERED, that the Defendant . . . is hereby found to be a Persistent Felony Offender[.]

ECF No. 1-3 (citations omitted, emphasis in original).

Judge Cohen subsequently imposed a sentence of fifteen years to life in prison, less than the maximum of twenty five years to life. In doing so, Judge Cohen reiterated his earlier findings, stating in pertinent part:

Mr. Lowery has a history and character, as such, that incarceration and lifetime supervision would best serve the public interest. The Court certainly has found that he is a dangerous person who this judge feels cannot be trusted to function normally in our society. Therefore . . . I'm sentencing his as a persistent felony offender to a term of fifteen years to life in prison.

ECF No. 5-3 at pp. 935–936.

Petitioner appealed and argued, *inter alia*, that his sentencing as a persistent felony offender was vindictive. As evidence of vindictiveness, Petitioner pointed to the following facts: 1) throughout the trial, a local newspaper in Livingston County had published "salacious" articles referring to Petitioner alternatively as "One of Livingston County's Most Dangerous Inmates," "Most Depraved Criminal in Livingston County" and "Most Dangerous Man in Livingston County"; 2) the SORA conviction was a non-violent E felony which in and of itself carried a maximum sentence of only two to four years if

Petitioner was sentenced as a second felony offender, and not a persistent felony offender; 3) the prosecution had made a plea offer to a sentence of 1 ½ to 3 years, as a second felony offender, but later, after trial, sought to have Petitioner sentenced as a persistent felony offender; 4) the prosecutor admitted that he made the plea offer because he was not sure he could obtain a conviction at trial; 5) the trial did not reveal any new evidence concerning Petitioner that was not already known when the prosecutor made the plea offer; 6) Judge Cohen was biased against Petitioner because he had previously adjudicated Petitioner a Level 3 Sex Offender;[19] and 7) the assertion by the prosecutor and Judge Cohen that Petitioner is a danger to the community is inconsistent with the testimony of Petitioner's parole officer, who indicated that Petitioner was not a difficult parolee to monitor.[20][21]

However, the New York State Supreme Court, Appellate Division Fourth Department, rejected that argument, stating:

> Finally, we reject defendant's related contention that his sentence was a result of prosecutorial and/or institutional vindictiveness.  The mere fact that a sentence imposed after trial is greater than that offered in connection with plea negotiations is not proof that defendant was punished for asserting his right to trial, and there is no indication in the record before us that the

---

[19] Indeed, Petitioner argued in his appellate brief that because of such bias, Judge Cohen probably would have rejected the offered plea bargain sentence. *See*, State Court R., SR 042 ("Even if Mr. Lowery had accepted the prosecution's plea offer to the statutory minimum for a second felony offender, it seems very likely that the court below would have rejected it anyway.").  Of course, that contention is inconsistent with the statements of trial counsel, who actually participated in the plea bargain process, who maintained that Judge Cohen had agreed to such a proposed sentence, though Judge Cohen vehemently denied ever having done so, and there is no record of the conversation.

[20] Of course, as noted earlier, Petitioner's parole officer was not aware that Petitioner was in violation of his parole conditions as a result of failing to report for SORA every ninety days.  He was only made aware of that fact when told by a member of the Livingston County Sheriff's Department, at which time he promptly assisted in arresting Petitioner.

[21] In opposing Petitioner's argument, the government on appeal stated: "A review of the record below demonstrates that the Defendant was not sentenced as a persistent felony offender because he rejected the People's plea offer and chose to go to trial, but because of a 30-year record of criminal convictions, including rape, assault, escape, and perjury, and demonstrated inability to follow institutional rules or those of parole." Government's Appellate Br., SR 289.

sentencing court or the prosecutor acted in a vindictive manner based on defendant's exercise of the right to a trial.

*People v. Lowery*, 1435 KA 15-01991, 158 A.D.3d 1179 (4th Dept. Feb. 2, 2018) (citation and internal quotation marks omitted). The New York Court of Appeals subsequently denied leave to appeal, 31 N.Y.3d 1119, 81 N.Y.S.3d 379 (Jun. 3, 2018).

On August 21, 2019, Petitioner's attorney filed the subject habeas corpus action. In the instant action, Petitioner has abandoned most of the arguments that he raised on appeal and alleges only that his conviction was unconstitutionally obtained for the following reasons: 1) "vindictive sentencing by prosecutor"; and 2) "vindictive sentencing [by the trial] court." ECF No. 1 at pp. 6, 8.  More specifically, Petitioner maintains that his sentence is unconstitutional due to the alleged vindictiveness of the prosecutor and judge in pursuing and imposing, respectively, a sentence based on the designation of persistent felony offender for what was a technical violation of SORA.  Petitioner further baldly maintains that the decision by the New York Appellate Division, Fourth Department, rejecting his vindictiveness arguments, was "unreasonable."[22]

Respondent opposes the petition. *See, e.g.*, Resp. Mem. of Law at p. 16 ("The record establishes why the DA sought a [persistent felony offender] sentence: not to punish petitioner for going to trial, but because of petitioner's long, violent criminal history.").

The Court has considered the arguments of the parties and the entire record, and finds, for the reasons discussed below, that Petitioner has not shown that the sentence he received as a persistent felony offender was the result of prosecutorial or judicial vindictiveness.

_____

[22] Mem. of Law at p. 24.

DISCUSSION

<u>Evidentiary Hearing Not Required</u>

Pursuant to Rule 8 of Rules Governing Habeas Corpus cases under Section 2254 in the United States District Courts and upon review of the answer, transcript and record, the Court determines that an evidentiary hearing is not required.

<u>Section 2254 Principles</u>

Petitioner brings this habeas corpus petition pursuant to 28 U.S.C. § 2254, and the general legal principles applicable to such a claim are well settled.

> As amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") and interpreted by the Supreme Court, 28 U.S.C. § 2254—the statutory provision authorizing federal courts to provide habeas corpus relief to prisoners in state custody—is "part of the basic structure of federal habeas jurisdiction, designed to confirm that state courts are the principal forum for asserting constitutional challenges to state convictions." *Harrington v. Richter*, 562 U.S. 86, 131 S.Ct. 770, 787, 178 L.Ed.2d 624 (2011). A number of requirements and doctrines . . . ensure the centrality of the state courts in this arena. First, the exhaustion requirement ensures that state prisoners present their constitutional claims to the state courts in the first instance. *See id*. (citing 28 U.S.C. § 2254(b)). Should the state court reject a federal claim on procedural grounds, the procedural default doctrine bars further federal review of the claim, subject to certain well-established exceptions. *See generally Wainwright v. Sykes*, 433 U.S. 72, 82–84, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). If the state court denies a federal claim on the merits, then the provisions of § 2254(d) come into play and prohibit federal habeas relief unless the state court's decision was either: (1) "contrary to, or involved an unreasonable application of, clearly established Federal law," or (2) "based on an unreasonable determination of the facts in light of the evidence presented in the State court." 28 U.S.C. § 2254(d)(1)-(2). Finally, when conducting its review under § 2254(d), the federal court is generally confined to the record before the state court that adjudicated the claim. *See Cullen v. Pinholster*, —— U.S. ——, 131 S.Ct. 1388, 1398–99, 179 L.Ed.2d 557 (2011).

*Jackson v. Conway*, 763 F.3d 115, 132 (2d Cir. 2014).  As just mentioned, regarding claims that were decided on the merits by state courts,

> a federal court may grant habeas corpus relief to a state prisoner on a claim that was adjudicated on the merits in state court only if it concludes that the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1)–(2).
>
> A state court decision is contrary to clearly established Federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a result opposite to the Supreme Court's result.
>
> A state court decision involves an unreasonable application of clearly established Federal law when the state court correctly identifies the governing legal principle but unreasonably applies it to the facts of the particular case.  To meet that standard, the state court's decision must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.  It is well established in this circuit that the objectively unreasonable standard of § 2254(d)(1) means that a petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.

*Santana v. Capra*, No. 15-CV-1818 (JGK), 2018 WL 369773, at *7–8 (S.D.N.Y. Jan. 11, 2018) (Koeltl, J.) (citations and internal quotation marks omitted).

When applying these standards,

> [t]he state court's findings of fact are presumed to be correct unless the petitioner can rebut this presumption by clear and convincing evidence[,] [28 U.S.C.] § 2254(e)(1)[, and] [t]he petitioner bears the ultimate burden of proving by a preponderance of the evidence that his [federal] constitutional rights have been violated. *Jones v. Vacco*, 126 F.3d 408, 415 (2d Cir.1997).

*Epps v. Poole*, 687 F.3d 46, 50 (2d Cir. 2012), as amended (Aug. 9, 2012).

Conversely, "[a] claim that a state conviction was obtained in violation of state law is not cognizable in the federal court." *Howard v. Walker*, 406 F.3d 114, 121 (2d Cir. 2005) (citing *Estelle v. McGuire*, 502 U.S. 62, 68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991) and *Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir.1998)); *see also, Guerrero v. LaManna*, 325 F. Supp. 3d 476, 483 (S.D.N.Y. 2018) ("The role of federal courts reviewing habeas petitions is not to re-examine the determinations of state courts on state law issues, but only to examine federal constitutional or statutory claims. 28 U.S.C. § 2254(a); *see Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 116 L.Ed.2d 385 (1991).  Federal courts deciding habeas petitions do not serve as appellate courts to review state court decisions of state law claims. Their purpose instead is to review whether the circumstances surrounding the petitioner's detention 'violate fundamental liberties of the person, safeguarded against state action by the Federal Constitution.' *Townsend v. Sain*, 372 U.S. 293, 311–312, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). Habeas petitions may not simply repackage state law claims, which have previously been found to be meritless, in order to obtain review. *DiGuglielmo v. Smith*, 366 F.3d 130, 136 (2d Cir. 2004).").

<u>Prosecutorial/Judicial Vindictiveness in Sentencing</u>

It is well established that seeking or imposing a vindictive sentence against a criminal defendant, in response to his exercise of the right to proceed to trial, violates due process:

> To punish a person because he has done what the law plainly allows him to do is a due process violation "of the most basic sort." *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604. In a series of cases beginning with *North Carolina v. Pearce* and culminating in *Bordenkircher v. Hayes*, the Court has recognized this basic—and itself uncontroversial—principle. For while an individual certainly may be

penalized for violating the law, he just as certainly may not be punished for exercising a protected statutory or constitutional right.

*United States v. Goodwin*, 457 U.S. 368, 372, 102 S. Ct. 2485, 2488, 73 L. Ed. 2d 74 (1982) (footnote omitted). It is similarly well-settled that a desire to punish a defendant for his criminal actions, in and of itself, is neither improper nor an indication of such vindictiveness. *See, U.S. v. Goodwin*, 457 U.S. at 372–73, 102 S. Ct. at 2488 ("The imposition of punishment is the very purpose of virtually all criminal proceedings. The presence of a punitive motivation, therefore, does not provide an adequate basis for distinguishing governmental action that is fully justified as a legitimate response to perceived criminal conduct from governmental action that is an impermissible response to noncriminal, protected activity."). The due process violation arises where the defendant can objectively show that the prosecutor and/or trial court was motivated by a desire to retaliate against him "for doing something that the law plainly allowed him to do." *U.S. v. Goodwin*, 457 U.S. at 384, 102 S.Ct. at 2494.[23]

A habeas petitioner may show a due process violation based on vindictiveness either by producing evidence of actual vindictiveness, or by producing evidence from which vindictiveness may be presumed, subject to rebuttal by the respondent. *See, United States v. Johnson*, 171 F.3d 139, 140 (2d Cir. 1999) ("[A]n indictment will be dismissed if there is a finding of 'actual' vindictiveness, or if there is a presumption of

---

[23] *See also, Corbitt v. New Jersey*, 439 U.S. 212, n. 7, 232, 99 S. Ct. 492, 504, 58 L. Ed. 2d 466 (1978) ("The message of *Pearce*, as well as *Jackson*; *Brady v. United States, supra*; *Chaffin v. Stynchcombe*, 412 U.S. 17, 93 S.Ct. 1977, 36 L.Ed.2d 714; and *Bordenkircher v. Hayes*, 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, is that where the legislature, prosecutor, judge, or all three "deliberately employ their charging and sentencing powers to induce [a] defendant to tender a plea of guilty," *Brady, supra*, 397 U.S., at 751 n. 8, 90 S.Ct., at 1470 n. 8, and where they do so with the "objective [of] penaliz[ing] a person's reliance on his legal rights, [such action] is 'patently unconstitutional.' " *Bordenkircher, supra*, 434 U.S., at 363, 98 S.Ct., at 668, quoting Chaffin, supra, 412 U.S., at 32–33, n. 20, 93 S.Ct., at 1986, n. 20.")

vindictiveness that has not been rebutted by objective evidence justifying the prosecutor's action.").[24]

> A finding of actual vindictiveness requires "direct" evidence, such as evidence of a statement by the prosecutor, which is available "only in a rare case." *United States v. Goodwin*, 457 U.S. 368, 380–81 & nn. 12–13, 384 & n. 19, 102 S.Ct. 2485, 73 L.Ed.2d 74 (1982); [*U.S. v.*] *King*, 126 F.3d [394,] 397 [(2d Cir. 1997)].[25]
>
> \*\*\*
>
> A presumption of vindictiveness arises when the circumstances of the case create a "realistic likelihood" of prosecutorial vindictiveness. *King*, 126 F.3d at 397 (internal quotation marks omitted). . . . The relevant question, therefore, is whether there is a "realistic likelihood" that the Government [or Judge] acted out of a vindictive motivation, rather than a legitimate one[.]

*U.S. v. Johnson*, 171 F.3d at 140–41. Such a presumption only arises where "the totality of the objective circumstances" makes it likely that the complained-of action was taken in retaliation for the criminal defendant's "invocation of a permitted procedure." *U.S. v. King*, 126 F.3d 394, 398 (2d Cir. 1997).

In sum, a presumption of vindictiveness applies where a judge or prosecutor takes some detrimental action against a criminal defendant after the defendant's exercise of a legal right, under circumstances that make it "reasonably likely" that the increased sentence was the result of vindictiveness. *See, United States v. Singletary*, 458 F.3d 72,

---

[24] *See also, United States v. King*, 126 F.3d 394, 397 (2d Cir. 1997) ("This need to avoid the appearance of vindictiveness has taken the form of a presumption of prosecutorial vindictiveness, *United States v. Goodwin*, 457 U.S. 368, 373, 102 S.Ct. 2485, 2488-89, 73 L.Ed.2d 74 (1982), applied when (but only when) the circumstances of a case pose a "realistic likelihood" of such vindictiveness, *Blackledge*, 417 U.S. at 27, 94 S.Ct. at 2102. When the presumption is applied, it may be rebutted "by objective evidence justifying the prosecutor's action." *Goodwin*, 457 U.S. at 376 n. 8, 102 S.Ct. at 2490 n. 8. Otherwise, the tainted action must be thrown out.").

[25] *See also, United States v. Pacheco*, 512 F. App'x 112, 114 (2d Cir. 2013) ("To establish actual vindictiveness, a defendant must show that a prosecutor's charging decision is a direct and unjustifiable penalty, that resulted solely from the defendant's exercise of a protected legal right.") (citation omitted); *United States v. Sanders*, 211 F.3d 711, 717 (2d Cir. 2000) ("We agree with the district court that the defendants failed to establish actual vindictiveness because they failed to offer evidence of any 'genuine animus' motivating the prosecution.").

76 (2d Cir. 2006) ("[W]e look to see if it is reasonably likely that the District Court imposed the increased sentence because it was actually being vindictive.  If we find a "reasonable likelihood" that actual vindictiveness motivated the increased sentence, we then apply the *Pearce* presumption, and the sentencing authority must rebut the presumption that an increased sentence resulted from vindictiveness.") (citations omitted).

> A presumption of vindictiveness may be rebutted with a showing of "legitimate, articulable, objective reasons" for the [alleged vindictive action]. *Contreras*, 108 F.3d at 1263. "[T]he burden is shifted to the prosecutor [or judge] to show that his decisions were justified by independent reasons or intervening circumstances which dispel the appearance of vindictiveness." *United States v. Griffin*, 617 F.2d 1342, 1347 (9th Cir.1980). *See also United States v. Motley*, 655 F.2d at 188 n. 1.

*U.S. v. King*, 126 F.3d at 399.

Significantly, a presumption of vindictiveness generally does *not* arise simply because a defendant who rejects a plea offer later receives a harsher sentence after trial. *See, United States v. Pacheco*, 512 F. App'x 112, 114 (2d Cir. 2013) ("A defendant is generally not entitled to a presumption of prosecutorial vindictiveness in a pretrial setting. Although this principle is not categorical, Pacheco has not offered any reason for us to depart from it, and we therefore adhere to the general rule. Pacheco may succeed on his vindictiveness argument only if he can establish actual vindictiveness.") (citations omitted); *see also, Page v. Spitzer*, 101 F. App'x 842, 843 (2d Cir. 2004) ("Page asserts that he was deprived of due process by the prosecutor's vindictive efforts to have him sentenced as a persistent felony offender, purportedly as punishment for Page's earlier rejection of a more lenient plea offer and insistence on a suppression hearing. In fact, the record demonstrates only that the prosecution was not willing to offer Page the same plea agreement after the suppression hearing as it had offered before the hearing. Such

circumstances fail to support a presumption of vindictiveness.") (collecting cases); *Rodrigues v. Kaplan*, No. 9:11-CV-0132 NAM/RFT, 2014 WL 1875346, at *6 (N.D.N.Y. May 9, 2014) ("Under the Sixth Amendment to the Constitution, criminal defendants are guaranteed the right to a trial by jury, and a state may not penalize a person for exercising a right guaranteed under the Constitution.  At the same time, the Supreme Court has squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.") (citations and internal quotation marks omitted).

Neither will a court find actual vindictiveness in the pretrial setting simply because a prosecutor threatens to seek a longer sentence if his plea offer is rejected. *See, e.g., Paradise v. CCI Warden*, 136 F.3d 331, 335 (2d Cir. 1998) ("[I]t is permissible for a prosecutor to threaten a defendant with additional charges should he refuse to plead, so long as the defendant is "'free to accept or reject the prosecution's offer.' *Bordenkircher v. Hayes*, 434 U.S. 357, 363, 98 S.Ct. 663, 668, 54 L.Ed.2d 604 (1978).").  Rather, where a showing of actual vindictiveness is required,

> [i]n order to prevail on his claim, [the defendant] must show that (1) the prosecutor harbored genuine animus toward the defendant, or was prevailed upon to [seek the challenged sentence] by another with animus such that the prosecutor could be considered a 'stalking horse,' and (2) he would not have [received the sentence imposed] except for the animus.

*United States v. Koh*, 199 F.3d 632, 640 (2d Cir. 1999) (citation and internal quotation marks omitted).

In the instant case, the Court finds, based on the facts and explanations set forth above, that in connection with Petitioner's sentencing, Petitioner has not demonstrated either presumptive or actual vindictiveness by either Judge Cohen or the prosecutor, and

that even if such a presumption did arise, Judge Cohen and the prosecutor demonstrated non-vindictive motives sufficient to overcome any such presumption.

In this regard, as evidence of vindictiveness, Petitioner notes that the prosecutor was willing to allow him to plead guilty and receive a sentence of 1 ½ to 3 years as a second felony offender, but after trial sought to have him sentenced as persistent felony offender.

Petitioner also argues that the lengthy sentence he received as a persistent felony offender was unwarranted, since his violation of SORA was "highly technical."[26] Essentially, Petitioner argues "no harm, no foul," since, regardless of his failure to keep Livingston County apprised of his address every ninety days as required by SORA, the State of New York was always aware of his whereabouts since he was fitted with a GPS bracelet as a condition of his parole supervision.  Petitioner further also emphasizes that due to the "technical" nature of his SORA violation, the prosecutor was admittedly initially unsure whether he could obtain a conviction at trial.[27]  Petitioner contends that the sentence is therefore disproportionate to the offense, which suggests vindictiveness.[28]

As further evidence of vindictiveness, Petitioner asserts that the sentence he received as a persistent felony offender was unnecessary and excessive, since he was obviously a reformed man.  Indeed, Petitioner alleges that his behavior during the ten years prior to the instant conviction, both in prison and while on parole, was "excellent."[29]

---

[26] Mem. of Law at p. 2.
[27] Adding to the supposed "technical" nature of his conviction, Petitioner also suggests that he may have been "confused" about his need to report to the Livingston County Sheriff's Office, since he had been told to stay away from the nearby Livingston County Jail from which he had escaped. Memorandum of law at p. 2.  Although, the jury clearly rejected the "confusion" argument, since it found beyond a reasonable doubt that Petition knew he had to report to the Livingston County Sheriff's Office.
[28] In making this argument, Petitioner
[29] Mem.  of Law at p. 1.

Petitioner also contends that in seeking a persistent felony offender sentence, the prosecutor was acting as a "stalking horse" for the Livingston County Sheriff's Office, which wanted to further punish him for his actions in 1986, when he escaped from the Livingston County Jail and injured a Sheriff's deputy.[30]

Petitioner also contends that comments allegedly made by the prosecutor to the press after sentencing show a vindictive motive.

However, the Court does not find any of these arguments persuasive on the question of prosecutorial or judicial vindictiveness.[31]   For example, the fact that the prosecutor sought a persistent felony offender sentence after Petitioner rejected the plea offer is not evidence of vindictiveness, particularly since the prosecutor explained his reason for making the plea offer, which offer Petitioner was free to accept or reject, and since he maintained all along that Petitioner was subject to sentencing as a persistent felon if convicted after trial.

Additionally, Petitioner's argument about the persistent felony offender sentence being disproportionate to the SORA violation, and therefore suggesting vindictiveness, is disingenuous, since the sentence he received was based on all the cumulative factors

---

[30] On this point, Petitioner baldly asserts that "the Sheriff's Office had a visceral hatred for Mr. Lowery since the 1986 incident." Mem.  of Law at p. 10.

[31] For example, Judge Cohen never gave any indication that he would accept the proposed plea offer of 1 ½ to 3 years.  Nor did Judge Cohen ever give any indication prior to trial that Petitioner would or would not be sentenced as a persistent felony offender if he went to trial. *Compare, Izaguirre v. Lee*, 856 F. Supp. 2d 551, 577 (E.D.N.Y. 2012) ("[T]he Court finds that the Pearce presumption is warranted where the trial court stated, pre-trial, in the context of plea negotiations, that she would impose the non-mandatory statutory maximum if the defendant went to trial, and then imposed that sentence after trial.") (emphasis in original).  Consequently, the fact that Judge Cohen ultimately sentenced Petitioner as a persistent felony offender does not raise any presumption of vindictiveness.  Nor is there any indication that in sentencing Petitioner as a persistent felony offender Judge Cohen actually sought to punish him for exercising his right to proceed to trial.  Rather, the record affirmatively indicates that Judge Cohen sentenced Petitioner based on his evaluation of relevant factors set forth in the persistent felony offender statute.  The same is true with regard to the prosecutor.

listed in the persistent felony offender statute and not just on the facts of the SORA conviction viewed in isolation.

Further, Petitioner's contention that his sentence suggests vindictiveness since his behavior during the ten years prior to the instant conviction, both in prison and while on parole, was "excellent," is simply incorrect.  For example, in 2009, his parole was revoked, for repeated drug use, and he was sent back to prison for two years.  Then, after he was released to parole again, in 2011, he failed to comply with the SORA requirements, which was both a violation of state law and a violation of the conditions of his parole. [32]

There is similarly no factual basis in the record for Petitioner's argument that the prosecutor was acting as a "stalking horse" for the Livingston County Sheriff, who had personal animus toward Petitioner.  Moreover, Petitioner's actions in 1986, involving the jail escape and assault, were proper factors to be considered when deciding whether he should be sentenced as a persistent felony offender.

Finally, the Court does not agree that the prosecutor's alleged comments to the press following sentencing reveal any improper vindictiveness.  In that regard, the Court finds that the prosecutor's alleged statement, which Petitioner has both misquoted and used out of context, [33] does not indicate any improper intention to retaliate against Petitioner for exercising his right to proceed to trial.

Indeed, Petitioner's arguments are almost entirely misplaced in that they attempt to explain why the sentence imposed was unnecessary or unwise, as opposed to showing

---

[32] These facts arguably show that, as maintained by the prosecutor, despite Petitioner's many years in prison he remained unwilling or unable to comply with the requirements of the law.
[33] Petitioner asserts that the prosecutor expressed a desire to "get his teeth" into Petitioner, which is not what he actually said. Mem.  of law at p. 22.  Similarly, in his reply memo, Petitioner states, "At a press conference, the prosecutor bragged that he had 'gotten his teeth into the defendant,'" which is also not true.

that it was sought or imposed in retaliation for Petitioner's exercise of a lawful right.  In any event, the record indicates that the prosecutor and Judge Cohen were motivated by permissible, non-retaliatory considerations.  Accordingly, the Fourth Department's denial of Petitioner's vindictive sentencing claim was neither contrary to nor an unreasonable application of, clearly established Federal law, nor a decision that was based on an unreasonable determination of the facts in light of the evidence presented. *See* 28 U.S.C. § 2244(d).

## CONCLUSION

The application under 28 U.S.C. § 2254 is denied.  Pursuant to 28 U.S.C. § 2253, the Court declines to issue a certificate of appealability, since Petitioner has not made a substantial showing of the denial of a constitutional right.  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied. *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal *in forma pauperis* should be directed on motion to the United States Court of Appeals for the Second Circuit in accordance with Rule 24 of the Federal Rules of Appellate Procedure.  The Clerk of the Court is directed to close this action.

So Ordered.

Dated: Rochester, New York
       February 1, 2023

ENTER:

CHARLES J. SIRAGUSA
United States District Judge